UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATTINA STEELE,

    Plaintiff,

  v.

LENDING CLUB CORPORATION,

    Defendant.

Case No. 18-cv-02023-RS

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

## I.    INTRODUCTION

Plaintiff Pattina Steele was offered employment by defendant Lending Club Corporation pursuant to a written offer letter that included an provision calling for arbitration of all disputes between "you and the company" pursuant to the "JAMS rules then in effect." Steele signed the letter when first sent to her, purportedly under pressure that she needed to return it "immediately." Steele signed it again approximately two weeks later, at the commencement of her employment.

In this action, Steele alleges she was subjected to harassing and abusive comments from coworkers, to which Lending Club failed to respond appropriately. Lending Club moves to compel arbitration, and to stay or dismiss this action. The matter has been submitted without oral argument pursuant to Civil Local Rule 7-1(b). The motion will be granted.

## II. BACKGROUND

Steele was employed by Lending Club as a "payment solutions specialist" between October of 2016 and March of 2017. She alleges she was emailed an offer of employment that contained an arbitration provision. As noted above, Steele asserts she was pressured to return the signed offer letter "immediately." She was told a training class was starting up soon, and the Lending Club wanted her to be in that class. Steele contends she did not review each provision of the offer letter, and that the arbitration provision did not in any way "stand out" to her. She claims she never before had executed an arbitration agreement with any employer.

Lending Club introduces evidence, which Steele does not challenge, that the offer letter and arbitration agreement were first sent to Steele by email and that she signed it electronically on September 28, 2016. Steele then manually signed another copy of the letter when she first reported for work on October 10, 2016, approximately two weeks later.

Steele alleges she was subjected to highly offensive comments and conduct from coworkers while employed by Lending Club. She contends that when she reported the situation to appropriate supervisors and human resources employees, she was terminated—"or more accurately, told that she was voluntarily quitting which was false."

This action followed. Steele asserts claims for relief under federal and state laws prohibiting hostile work environments, harassment, reprisal, and retaliation.

## III. DISCUSSION

### A. Enforceability of the Agreement

To resolve whether a dispute is subject to arbitration, the court first determines whether the parties agreed to arbitrate and, if they did, whether the agreement covers the dispute at issue. *Chiron Corp v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 1996). "[A]n agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Here, the evidence is unchallenged that

Steele electronically signed the agreement approximately two weeks before commencing work, and again in person on her first day. Although Steele *argues* there was "no meeting of the minds" because she did not "specifically agree to arbitrate sexual harassment claims," she has shown no basis for concluding the parties did not enter into an agreement to arbitrate.

Furthermore, the fact that the agreement does not expressly refer to "sexual harassment claims," does not preclude its application to the claims Steele is advancing. The agreement explicitly calls for arbitration of "all matters in dispute between you and the Company." It specifically lists as examples claims, "arising from your employment with, or termination, from Lending Club, any claims . . . for wrongful or constructive discharge, torts, or violations of federal, state or local laws." As such, the agreement covers Steele's claims.

### B. Enforceability of the Agreement

As an employment arbitration policy, the agreement is subject to the Federal Arbitration Act ("FAA"). *Circuit City Stores v. Adams*, 532 U.S. 105 (2001). Federal policy encourages arbitration, prohibiting state courts from treating arbitration agreements differently than any other contractual agreement. *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1747 (2011); *Gilmer v. Inter-state/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). As a result, courts cannot nullify arbitration agreements based either on state law that applies only to arbitration agreements or a general public policy against arbitration. *Concepcion*, 131 S. Ct. at 1747. The court must apply a contractual defense, like unconscionability, in the same way it would to any contract dispute. *Id.* at 1748. Accordingly, the court reviews the agreement in the context of the FAA's mandate to encourage arbitration and only considers Steele's unconscionability claim under California contract law. *Id.* at 1745; *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1175 (N.D. Cal. 2012).

Under California law, a contractual clause is unenforceable only if it is both procedurally

and substantively unconscionable. *See Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114. Still, "both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.*

a. Procedural Unconscionability

Procedural unconscionability arises from circumstances surrounding the formation and negotiation of a contract. *Armendariz*, 24 Cal. 4th at 113. It focuses on two elements: oppression and surprise. *Id.* "Oppression" occurs where one party has little or no ability to negotiate the terms of the contract, resulting in an unequal bargaining position and lack of meaningful choice. *Id.* "Surprise" looks to the extent to which the terms of the contract were hidden by the party in the stronger bargaining position. *Id.*

Steele argues that Lending Club's "take it or leave it" imposition of the agreement as a condition of employment makes the agreement oppressive, particularly given that she was told she had to return it "immediately." While arbitration agreements demanded as a condition of employment do implicate procedural unconscionability, the Ninth Circuit has made clear that if "there is no other indication of oppression or surprise," then "the agreement will be enforceable unless the degree of substantive unconscionability is high." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal.App.4th 695, 704 (2013).

Here, although the arbitration provision was not specially highlighted, it was not "buried" in a lengthy document. Steele's argument that she was pressured to sign the document "immediately" is undercut by the fact that she signed it a second time nearly two weeks after it was first presented to her.

Additionally, the failure of the offer letter to include a copy of the "JAMS Employment

Rules" does not rise to procedural unconscionability. A contract incorporates another document, such as the JAMS Rules, where it references the document, the reference is clear and unequivocal, and the document is readily available or easily obtained by either party. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997); *see also Howard v. Octagon*, *Inc.*, 2013 U.S. Dist. LEXIS 131366, *47 (N.D. Cal. Sept. 12, 2013) (employer's failure to provide the AAA Rules where the arbitration agreement "clearly and explicitly" incorporates the Rules and they are "readily available" is not enough to establish procedural unconscionability); *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 932–33 (N.D. Cal. 2012) ("Under general California rules of contract interpretation, matters like the AAA rules can be incorporated into a contract by reference provided the incorporation is clear and the incorporated rules are readily available"). Here, the agreement appropriately incorporates the JAM Rules by reference. Although Steele suggests she could not have easily located those rules or readily understood them, she has not established "surprise" that would invalidate the agreement. In sum, any procedural unconscionability is low.

Substantive Unconscionability

An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided results," typically looking to "whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner." *Armendariz*, 24 Cal. 4th at 114; *Serpa*, 215 Cal. App. 4th at 703. "[T]he paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc*., 115 Cal. App. 4th 638, 657 (2004). California law requires an arbitration agreement to have a "modicum of bilaterality"– focusing on whether a provision is so one-sided as to shock the conscience. *Armendariz*, 24 Cal. 4th at 117; *see also Nyulassy v. Lockheed Martin Corp.,* 120 Cal. App. 4th 1267, 1281 (2004). Steele argues several provisions of the agreement are substantively unconscionable.

*i. Discovery Provisions*

Steele asserts the agreement is substantively unconscionable because it imposes limits on

the parties' ability to conduct discovery. In particular, while the parties are permitted to take at least one deposition, absent agreement by the parties, the amount of any additional discovery is to be decided by the arbitrator.

Steele relies on *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004) to support her claim that discovery restrictions render arbitration agreements substantively unconscionable. In *Fitz*, however, the arbitration agreement required the party requesting additional discovery to demonstrate that a "fair hearing would be *impossible* without additional discovery." *Id.* at 716 (emphasis original). The court emphasized that the "safety valve" of arbiter discretion was inadequate because the arbitrator was "constrained by an 'impossibility' standard." *Id.* at 717; *see also Doubt v. NCR Corp.*, 2010 U.S. Dist. LEXIS 102484 (N.D. Cal. Sept. 13, 2010) (invalidating an arbitration agreement that had an impossibility standard stating, "there is no right to seek documents unless Plaintiff can demonstrate that a fair hearing would be 'impossible' without them."). Here, by contrast, Steele is required only to demonstrate a "reasonable need" for additional discovery. *See also Fouts v. Milgard Mfg.*, U.S. Dist. LEXIS 58052 (N.D. Cal. April 25, 2012) ("California courts have upheld arbitration agreements that permit only a single deposition per party so long as the arbitrator has discretion to permit more discovery should it be 'needed.'").

While the agreement seeks to streamline discovery procedures, such provisions are characteristic of arbitration agreements. Parties adopt arbitration agreements as an explicit means of avoiding the expensive and time intensive discovery process. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. App. 4th 1109, 1168 (2013). "[*Conception*] held that the FAA preempts unconscionability rules that interfere with fundamental attributes of arbitration." *Id.* "Efficient, streamlined procedure is a fundamental attribute of arbitration with which state law may not interfere." *Id.* at 1141. "Limited discovery, in itself, cannot be the basis for finding an arbitration agreement unconscionable, because such a rule would impermissibly rely on the fact that an agreement to arbitrate is at issue." *Zaborowski v. MHN Gov't Servs.*, 936 F. Supp. 2d 1145, 1154 (N.D. Cal. 2013). In this instance, the agreement provides general restrictions on discovery while

1  also allowing the arbitrator to order more where appropriate. The discovery provision applies to
2  both parties, restricting their discovery equally. Accordingly, the agreement's discovery provision
3  does not result in "overly harsh" results that "shock the conscience."

### *ii. Injunctive Relief Provision*

Steele further argues that the agreement is substantively unconscionable because it includes a "carve-out," allowing a party to seek injunctive relief from the courts. She contends this provision is one-sided because, as a practical matter, only employers are likely to make injunctive relief claims and invoke the carve-out. While such an argument might have been viable under prior California law, *see*, *e.g.*, *Trivedi v. Curexo Technology Corp*., 189 Cal.App.4th 387 (2010), it no longer is. *See Baltazar v. Forever 21, Inc*., 62 Cal. 4th 1237, 1247 (2016) (holding that carve-outs for provisional injunctive relief such as this merely confirm rights available under California statutes and are therefore not unconscionable, and disapproving *Trivedi* to the extent inconsistent.)

### *iii. JAMS neutrals*

Steele contends the agreement is substantively unconscionable because JAMS arbitrators also serve as mediators. While Steele does not explain how the fact that JAMS neutrals conduct mediations *and* arbitrations affects the issue, her basic point seems to be that JAMS arbitrators arguably have an incentive to favor companies over individuals, as companies tend to be "repeat customers" for arbitration and mediation providers. There is no precedent for invalidating arbitration agreements on such grounds, and no reason to assume JAMS arbitrators lack the requisite impartiality.

### *iv. Fees*

Finally, Steele contends the agreement is unconscionable because it requires her to pay administrative fees under JAMS rules. *See* Armendariz, 24 Cal. 4th at 110–11 ("[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement

or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court."

The agreement, however, is silent as to any fee obligation. Although the agreement incorporates JAMS rules, and those rules expressly state that an initial case management fee is "the only fee that an employee may be required to pay," they also state that an employee and employer may agree to a "different allocation" of fees. Here, Lending Club has advised Steele from the outset of this dispute that it will pay the entirety of the administrative fees. There is no substantive unconscionability, even if JAMS' ordinary initial case management fee could otherwise be considered an expense of a type that an employee would not face if permitted to bring the action in court.

## V.  CONCLUSION

The motion to compel arbitration is granted. This action is hereby stayed pending completion of such arbitration. The Clerk is directed to close the file for administrative purposes. It may be reopened for such additional proceedings as may be appropriate and necessary upon conclusion of the arbitration.

**IT IS SO ORDERED**.

Dated:  October 3, 2018

RICHARD SEEBORG
United States District Judge

Order Granting Motion to Compel Arbitration
Case No. 18-cv-02023-RS
8